# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

UP TO $932,611.56 IN FUNDS ON DEPOSIT
IN BANK OF AMERICA ACCOUNT ENDING
IN 7657 HELD IN THE NAME OF
HOLIE HOUGHTALING

Case Number: 19-806M (NJ)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Zachary Hoalcraft, being duly sworn depose and say:

I am a Special Agent assigned to the United States Secret Service and have reason to believe that in the Eastern District of Wisconsin there is now certain property, namely, up to $932,611.56 in funds on deposit in Bank of America account ending in 7657 held in the name of Holie Houghtaling that is civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1), and criminally forfeitable under 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), as property that is derived from proceeds traceable to specified unlawful activity, namely, wire fraud in violation of 18 U.S.C. § 1343, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b)(2) and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

✓ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Sworn to before me, and subscribed in my presence

February 5, 2019  4:00 pm
Date and time issued

Nancy Joseph, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Affiant
Zachary Hoalcraft, USSS

at Milwaukee, Wisconsin
City and State

Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANT

I, Zachary Hoalcraft, having been duly sworn on oath, state as follows:

## Affiant's Background

1. I am a Special Agent with the United States Secret Service and have been so employed since 2017. I am currently assigned to the United States Secret Service Milwaukee Financial Crimes Task Force ("MFCTF"). My duties as an investigator on the MFCTF include investigating financial crimes, such as identity theft, check fraud, credit card fraud, bank fraud, wire fraud, currency-counterfeiting offenses, and money laundering. During my employment with MFCTF, I have conducted investigations that have resulted in seizures of criminally derived property, including monetary instruments.

2. As a Task Force Agent, I have conducted investigations into wire fraud, money laundering, and other complex financial crimes. In the course of those investigations, I have used various investigative techniques, including undercover operations, reviewing physical and electronic evidence, and obtaining and reviewing financial records. In the course of those investigations, I have also become familiar with techniques that criminals use to conceal the nature, source, location, and ownership of proceeds of crime and to avoid detection by law enforcement of their underlying acts and money laundering activities.

3. Because I am submitting this affidavit for the limited purpose of establishing probable cause for the requested seizure warrant, I have not included in this affidavit every detail I know about this investigation. Rather, I have included only the information necessary to establish probable cause for the requested seizure warrant.

4. The facts set forth in this affidavit are based on my personal knowledge, including what I have learned through my training and experience as a law enforcement officer, my review of documents and other records obtained in the course of this investigation, and information I have obtained in the course of this investigation from the victim of this incident.

## Property Sought to be Seized

5. I submit this affidavit in support of an application for a warrant to seize up to $932,611.56 in funds on deposit in Bank of America account ending in 7657 ("BoA 7657"), held in the name of Holie Houghtaling.

6. For the reasons set forth below, I submit that up to $932,611.56 in funds on deposit in BoA 7657 are:

    a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses committed in violation of 18 U.S.C §1343;

    b. Subject to civil forfeiture under 18 U.S.C §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C. §§ 1956(c)(7) and 1961(1);

c.  Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

d.  Subject to seizure via civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

## Summary of Scheme to Defraud

7. I submit that there exists probable cause to believe that up to $932,611.56 in proceeds of a wire fraud scheme – which involved material misrepresentations and the use of interstate wires in connection with a Business Email Compromise fraud scheme – have been deposited into BoA 7657, the account from which up to that amount of funds are sought to be seized.

8. As part of a BEC fraud scheme, an unknown suspect or suspects caused the following six Automated Clearing House ("ACH") payments, totaling $932,611.56, from victim W.E.G. and its subsidiaries, to be wire transferred from a bank account in the Eastern District of Wisconsin into BoA 7657:

a.  $138,725.92 from W.B.S.,
b.  $7,367.67 from W.E.,
c.  $60,419.44 from W.P.S.C.,
d.  $42,207.50 from N.S.G.C.,
e.  $492,617.18 from M.E.R.C., and
f.  $191,273.85 from P.G.L.C.C.

**Facts Supporting Findings of Probable Cause for Issuance of Seizure Warrant**

**Common attributes of Business Email Compromise fraud schemes**

9. According to a March 2013 publication of the U.S. Federal Trade Commission, consumers lose hundreds of millions of dollars annually to cross-border financial crimes. Some of the most common cross-border financial schemes originate in West African nations such as Nigeria. Law enforcement agencies therefore sometimes refer to such schemes as "West African fraud schemes."

10. One common West African fraud scheme is the Business Email Compromise ("BEC") fraud scheme, where a fraudster gains unauthorized access to, or spoofs, the email address of a victim and instructs the victim's financial institution to wire money to a bank account controlled by the fraudster or his associates.

11. Foreign perpetrators of such scams sometimes recruit witting or unwitting persons within the United States to open bank accounts that the foreign perpetrators use to receive proceeds of the scam. The foreign perpetrators often target persons within the United States who lack education or common sense, or who are seeking companionship, to open such accounts at

2

financial institutions within the United States. Sometimes those accounts are opened by a victim of a romance scam. Sometimes the accounts used to receive proceeds of a West African fraud scam are opened in the name of a fictitious business, such as a limited liability company, in order to conceal the fraudulent nature of the recipient bank account from victims and victims' financial institutions.

## January 24, 2019 through January 28, 2019 ACH wire transfers totaling $932,611.56 in fraud proceeds into BoA 7657

12. On January 24, 2019, victim corporation W.E.G., headquartered in the Eastern District of Wisconsin, was instructed through its third-party payment processing company, T., that there were new instructions to send ACH payments to O.B.G., an environmental science and engineering consulting firm located in Syracuse, New York, for services provided to W.E.G. and its subsidiaries.

13. On that same date, a request to accelerate all pending invoice payments was made to W.E.G. with the offer of a discounted amount if all invoices were paid early.

14. On January 24, 2019, all pending ACH payments from W.E.G., and its subsidiaries, to O.B.G. were drafted and processed through US Bank by T., W.E.G.'s third-party payment service. A total of six ACH payments were completed by various W.E.G. subsidiaries totaling $932,611.56.

15. After all ACH payments had been completed, W.E.G. was informed there had been an unauthorized intrusion into an email account at O.B.G.'s finance department. The compromised email account was then used by unknown actors to change routing and account numbers to be used by W.E.G. for the payment of services provided by O.B.G. to W.E.G. from the current banking information on file to the routing and account information of BoA 7657, a personal account held in the name of Holie Houghtaling of Oceanside, California.

16. On January 29, 2019, W.E.G., with the assistance of US Bank, attempted to recall the previously processed ACH payments, however Bank of America responded to the recall process stating that BoA 7657 had insufficient funds.

17. As of February 4, 2019, neither W.E.G. nor any associated subsidiaries have received any money back from this scam.

## Investigation into Holie Houghtaling and BoA 7657

18. According to information obtained from Bank of America, BoA 7657 is a personal account held by Holie Houghtaling, with a listed address of 38XX Vista Campana S, Unit XX, Oceanside, California 92057.

19. As of February 1, 2019, the balance in BoA 7657 was $12,093.89. Bank of America froze the account at the request of law enforcement due to the account being funded by payments from W.E.G. as the result of a BEC fraud scheme that had occurred at O.B.G.

20. Law enforcement records show Holie Houghtaling has a listed address of 38XX Vista Campana S, Unit XX, Oceanside, California 92057, however upon law enforcement attempting to locate Holie Houghtaling at her listed address, it was discovered that the address was vacant.

21. On February 4, 2019, I contacted G.M., Director of Legal Services for W.E.G. who confirmed that W.E.G. has never had any business relationship with, or employment records of, any individual named Holie Houghtaling.

22. On February 4, 2019, I contacted J.S., Senior Vice President of O.B.G., who confirmed that Holie Houghtaling has never been associated with O.B.G. or any of its subsidiaries, has never been a contract employee of O.B.G. or any of its subsidiaries, and has not been authorized to collect payments from clients of O.B.G. into her account.

### Applicable Asset Forfeiture Provisions

23. Under 18 U.S.C. § 984, a court may order the forfeiture of funds in a bank account into which monies subject to forfeiture have been deposited, without the need to trace the funds currently in the account to the specific deposits that are subject to forfeiture, up to the amount of the funds subject to forfeiture that have been deposited into the account within the past one-year period.

24. Section 984 (a) provides in part:

   a. In any forfeiture action in rem in which the subject property is cash [or] funds deposited in an account in a financial institution

      i. it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and

      ii. it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.

   b. Except as provided in subsection (c), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

25. 18 U.S.C. § 984(b) provides: "No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be commenced more than 1 year from the date of the offense."

26. Thus, under Section 984, a court may order the civil forfeiture of monies found in a bank account into which deposits of criminal proceeds subject to forfeiture had been made, up

4

to the amount of the forfeitable deposits that have been made into the account within the prior one-year period, without the need for tracing the funds to be forfeited to any of the specific forfeitable deposits.

27. I submit that a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the funds for forfeiture because I have been advised of cases in which, even after restraining order or similar process has been issued to financial institution, the funds sought to be restrained were not effectively restrained by the financial institution. In my judgment, a seizure warrant would be the most effective way to assure the availability of the money sought to be seized for forfeiture.

## Conclusion

28. Based on the facts and circumstances set forth in this affidavit, I submit that there exists probable cause to believe that up to $932,611.56 in funds on deposit in Bank of America account ending in 7657, held in the name of Holie Houghtaling, are:

  a. Funds traceable to, and are therefore proceeds of, a wire fraud offense or offenses, committed in violation of 18 U.S.C. § 1343;

  b. Subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(C) and 984, including cross-references to 18 U.S.C §§ 1956(c)(7) and 1961(1);

  c. Subject to criminal forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c); and

  d. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

###